# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LONG DENG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. N21J-04630-AML |
| v. | ) | |
| | ) | |
| HK XU DING CO., LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: February 28, 2023
Decided: May 8, 2023

## <u>OPINION</u>

Upon Defendant's Motion for Reconsideration of Commissioner's Order:
**GRANTED**

John G. Harris, Esquire, BERGER HARRIS LLP, Wilmington, Delaware, Angus F. Ni, Esquire, AFN Law, PLLC, Seattle, Washington, *Attorneys for Plaintiff Long Deng.*

Thomas A. Uebler, Esquire, Kathleen A. Murphy, Esquire, MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, Delaware, *Attorneys for HK Xu Ding Co., Limited.*

**LEGROW, J.**

The plaintiff in this action obtained an out-of-state judgment against the defendant and seeks to satisfy that judgment by attaching and selling stock the defendant owns in a Delaware corporation. A Superior Court commissioner granted the plaintiff's motion to sell the stock, and the defendant moved for reconsideration of that order. The 8 million shares of stock at issue are certificated, and the certificate for those shares is in Chinese police custody. The issue before the Court is whether it may order attachment and sale of certificated stock when the certificate itself cannot be physically seized by the person charged with conducting the sale. The plaintiff maintains physical seizure of the certificate is not required to attach the shares under Delaware law, relying on a convoluted interpretation of the relevant statutes that is not supported by their plain language or the secondary sources the plaintiff cites. Because Delaware law requires physical seizure of a stock certificate before certificated shares may be attached and sold, and seizure has not been accomplished in this case, the plaintiff's motion to sell the shares should have been denied, and the order granting that motion must be vacated.

## **FACTUAL BACKGROUND**

Unless otherwise noted, the following facts are not disputed. On January 23, 2019, Plaintiff Long Deng ("Deng") sold 8,294,989 shares of iFresh, Inc. common stock to Defendant HK Xu Ding Co., Limited ("HK") for more than $7 million.[1]

---

[1] Pl.'s Mot. for Order to Sell Shares (hereinafter cited as "Mot. to Sell") ¶ 1.

iFresh is a Delaware corporation, and all 8,294,989 shares at issue in this case were "certificated in a single stock certificate in [HK's] name."[2]  When HK failed to pay the full purchase price for the stock, Deng filed suit in New York and obtained a default judgment against HK in the amount of $2,424,469.68 plus post-judgment interest.[3]

On June 11, 2021, Deng domesticated the New York judgment in Delaware under 10 *Del. C.* § 4782.  HK's stock certificate is in the custody of the Chinese police, and the parties have not indicated (and presumably do not know) when, if at all, the certificate will be returned to HK.[4]  Accordingly, it is undisputed that there is no certificate to be presented or seized for purposes of attaching or selling HK's iFresh shares.  Undeterred by this fact, Deng filed a Writ of Attachment *Fieri Facias* and a praecipe directing the Kent County Sheriff to attach HK's iFresh shares.  The Superior Court Prothonotary issued the Writ on April 28, 2022. The Kent County Sheriff returned service on May 4, 2022, showing iFresh's registered agent was served with the Writ of Attachment.[5]

---

[2] *Id.* ¶¶ 2-3.

[3] *Id.* ¶ 5.

[4] Def.'s Mot. for Reconsideration ¶ 4.

[5] The Sheriff's return indicates the Writ of Attachment was served on iFresh on March 4, 2022. *See* D.I. 12.  This date may be a typographical error, since the writ of attachment was not issued until April 28th.  The parties did not raise this factual discrepancy, so the Court notes it for the record but does not otherwise consider its relevance, if any, to the parties' dispute.

2

On June 3, 2022, Deng filed a motion in this Court for an order directing the Kent County Sheriff to auction HK's iFresh stock in satisfaction of the New York judgment (the "Motion to Sell"). Before filing the Motion to Sell, Deng repeatedly sought and obtained confirmation from iFresh that HK remained on iFresh's books as the stock's registered owner.[6] In the Motion to Sell, Deng argued Delaware law did not require physical seizure of the stock certificate before the shares could be sold at a public auction.[7] HK entered an appearance through counsel and opposed the Motion to Sell. After a hearing, the Superior Court Commissioner issued a bench ruling granting Deng's Motion to Sell.[8] The Commissioner then entered an order (the "Order"): (1) requiring iFresh to issue to Deng within 20 days a "certificate of the number of shares held by [HK];" and (2) directing the Kent County Sheriff, upon receipt of the iFresh certification, to sell the iFresh shares within 60 days.[9]

HK filed a motion for reconsideration of the Commissioner's Order along with a motion to stay execution of the Order. After briefing, the Court heard argument on both motions. The Court issued a bench ruling granting HK's motion to stay[10] and took the motion for reconsideration under advisement.

---

[6] Mot. to Sell ¶¶ 6, 9-10, 13.

[7] *Id.* ¶18-27.

[8] Due to technical difficulties, the recording of the hearing on the Motion to Sell was inaudible, and the Superior Court Reporter's office therefore could not prepare a transcript of the hearing.

[9] Comm'r's Order dated Sept. 20, 2022 ¶¶ 3-4.

[10] *Deng v. HK Xu Ding Co. Ltd.*, N21J-04630 AML (Dec. 5, 2022) (Transcript) at 37-41.

**PARTIES' CONTENTIONS**

HK argues the Commissioner erred in granting the Motion to Sell because 8 *Del. C.* § 324(a) and 6 *Del. C.* § 8-112 require "presentation of the stock certificate(s)" before execution process on certificated securities may proceed.[11] HK contends Deng has not complied with those statutes because the Kent County Sheriff has not seized the HK certificate and cannot seize it while it remains in Chinese police custody. HK's argument relies on the text of Sections 324 and 8-112 as well as the legislative history of the 1998 amendments to Section 324.

Deng responds that the plain language of Sections 324 and 8-112, together with 8 *Del. C.* § 169, unambiguously establishes that physical seizure of stock certificates is not required before certificated shares of Delaware corporations may be auctioned.[12] Deng asserts this construction of those statutes is supported by their legislative history and a law review article written by the chair of the committee that drafted the 1997 revisions to Section 8-112. Deng also argues a recent decision by the United States District Court for the District of Delaware supports his proffered interpretation of the relevant statutes.

---

[11] Mot. for Reconsideration ¶ 9 (quoting 8 *Del. C.* § 324(a), Ch. 339, Laws of 1998, Synopsis of Section 324).

[12] Pl.'s Opp. to Mot. for Reconsideration at 4-6.

## ANALYSIS

The parties agree the Commissioner's interpretation of the relevant statutory language is subject to *de novo* review.[13]  There is no Delaware precedent addressing the interplay between Sections 169, 324, and 8-112, at least since the most recent relevant amendments to those statutes.  The issue before the Court is straightforward: does Section 324 of the Delaware General Corporation Law ("DGCL") require physical seizure of a stock certificate before certificated shares of a Delaware corporation may be sold at auction?

The resolution of this question necessarily turns on the relevant statutory language.  First, Section 324(a) expressly states that certificated securities may not be attached or sold unless Section 8-112 has been satisfied.  Section 324(a) relevantly provides:

> The shares of any person in any corporation with all the rights thereto belonging, or any person's option to acquire the shares, or such person's right or interest in the shares, may be attached under this section for debt, or other demands . . . . So many of the shares . . . may be sold at public sale to the highest bidder, as shall be sufficient to satisfy the debt, or other demand, interest and costs, upon an order issued therefor by the court from which the attachment process issued . . . . ***Except as to an uncertificated security as defined in § 8-102 of Title 6, the attachment is not laid and no order of sale shall issue unless § 8-112 of Title 6 has been satisfied.***  If the shares of stock . . . be so sold, any assignment, or transfer thereof, by the debtor, after attachment, shall be void.[14]

---

[13] *Deng*, N21J-04630 AML (Dec. 5, 2022) (Transcript) at 4-5; Pl.'s Opp. to Mot. for Reconsideration at 3.

[14] 8 *Del. C.* § 324(a) (emphasis added).

5

Section 8-112 in turn provides that, subject to certain exceptions, a debtor's interest in a certificated security only may be reached by a creditor upon "actual seizure" of the certificate. That Section states, in pertinent part:

> Except to the extent otherwise provided or permitted by §§ 169 and 324 of Title 8, §§ 365, 366 and Chapter 35 of Title 10, and subsection (d) hereof, the interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy. However, a certificated security for which the certificate has been surrendered to the issuer may be reached by a creditor by legal process upon the issuer.[15]

Section 8-112 refers to Sections 324 and 169 of the DGCL. Section 169 confirms the situs of capital stock in a Delaware corporation shall be regarded as being in Delaware for all purposes of "title, action, attachment, garnishment and jurisdiction."[16]

Section 324(a) was amended in 1998. Before the 1998 amendments, Section 324(a) did not mention Section 8-112 or make any distinction between certificated and uncertificated securities.[17] In 1998, however, the Delaware General Assembly amended Section 324(a) to include the language "[e]xcept as to an uncertificated security as defined in § 8-102 of Title 6, the attachment is not laid and no order of

---

[15] 6 *Del. C.* § 8-112(a).
[16] 8 *Del. C.* § 169.
[17] *See* Pl.'s Opp. to Mot. for Reconsideration, Ex. D, n. 47.

6

sale shall issue unless § 8-112 of Title 6 has been satisfied."[18]  In the synopsis to that statutory amendment, the General Assembly stated:

> "[t]he amendments to Section 324 establish that the execution process it provides is available only for securities of a debtor identified on the books of the corporation and, ***as to certificated securities, only upon satisfaction of the requirements of Section 8-112 of Title 6, including presentation of the stock certificates***.  The amendment is intended to enhance the utility of stock of a Delaware corporation as collateral."[19]

To summarize, the current version of Section 324(a)—the section of the DGCL authorizing attachment and sale of corporate stock—requires compliance with Section 8-112 for certificated securities.  There is no dispute that HK's iFresh stock is a "certificated security."  The language of Sections 324 and 8-112 is not ambiguous whether those sections are read together or separately.  The statutory language requires that, to attach certificated shares of a corporation and obtain an order to sell the security to satisfy a judgment, the officer making the attachment must actually seize the certificate.  There is no other reasonable way to read those two sections in harmony, and the synopsis to the 1998 amendments to Section 324 removes any question that the General Assembly expressly intended that result.

Deng seeks to avoid this result by seizing[20] upon Section 8-112's cross-reference to Sections 169 and 324 of the DGCL.  This argument is unavailing.  First,

---

[18] 8 *Del. C.* § 324(a), Ch. 339, Laws of 1998, § 68.  The other amendments to Section 324(a) are not relevant to the dispute before the Court in this case.

[19] *Id.*, Synopsis of Section 324 (emphasis added).

[20] Pun intended.

7

the cross-reference to Section 324 does not change the unambiguous meaning of those statutes as set forth above. To conclude otherwise would be to mire oneself in a circularity of reasoning from which there is no exit. Just because Sections 324 and 8-112 reference each other does not permit a conclusion that Section 324 does not mean what it expressly says.

Moreover, to the extent the cross-reference between Sections 324 and 8-112 creates ambiguity, the legislative history of the two sections clarifies their meaning. The uniform version of Section 8-112 required physical seizure of stock certificates. Before it was amended in 1998, however, Section 324(a) expressly permitted an officer to auction and sell certificated stock without physically seizing the certificate.[21] Accordingly, when Delaware adopted the uniform version of Section 8-112 in 1997, the General Assembly added the "except as otherwise provided language" to Section 8-112 to make clear that Section 8-112 was subordinate to Section 324.[22] Less than a year later, however, the General Assembly amended

---

[21] *Castro v. ITT Corp.*, 598 A.2d 674, 681 (Del. Ch. 1991).

[22] *See* 8 *Del. C.* § 201; Curtis R. Reitz, *Investment Securities: the New UCC Article 8 for Delaware*, 1 Del. L. Rev. 47, 74-75 (1998) ("The Bar Association's endorsement of Revised Article 8 was contingent upon inserting a clause into Revised Article 8 that made these DGCL provisions controlling over one provision of Article 8."). Deng relied on this article as ostensible support for his proffered interpretation of the relevant statutes, but the article does not actually support his position. The article was written before the 1998 amendments to Section 324, and Professor Reitz describes in admirable detail the problem created by Delaware's addition of the "except as otherwise provided" language in Section 8-112. Professor Reitz urged the Delaware State Bar Association to endorse changes to the DGCL to adopt Section 8-112's seizure requirement. *See Id.* at 87-88. The General Assembly did just that in 1998 by adding compliance with Section 8-112 to the requirements of Section 324.

Section 324 to require compliance with Section 8-112 in order to attach and sell certificated stock.[23] After that amendment, Section 8-112's reference to Section 324 no longer stood as an exception to the actual seizure rule, since Section 324 now expressly required compliance with Section 8-112.

Similarly, Section 8-112's reference to Section 169 does not create an exception to the seizure requirement for certificated shares. Section 169 is a jurisdictional statute; it confirms that Delaware is the situs of stock in a Delaware corporation.[24] That section performs two functions: (1) it gives Delaware courts jurisdiction to decide disputes regarding "incidents of stock ownership" like title, validity, and voting rights; and (2) it "supplies the jurisdictional basis for attachment and sequestrations of stock in Delaware corporations."[25] Nothing in Section 169, however, addresses the requirements of attaching or selling certificated stock.

Contrary to Deng's argument, Section 169's reference to the situs of capital stock does not create a legal fiction that a share certificate is physically located in Delaware for purposes of Section 8-112's seizure requirement. There is no language in either Section 169 or Section 8-112 that reasonably could be read in that manner. To the contrary, Section 169 does not distinguish between certificated and non-

---

[23] 8 *Del. C.* § 324(a), Ch. 339, Laws of 1998, § 68.
[24] EDWARD P. WELCH, ET AL., FOLK ON THE DELAWARE GENERAL CORPORATION LAW, § 169.01 (7th ed., 2022-2 Supp. 2014-2022) (attached as Ex. C to Pl.'s Opp. to Mot. for Reconsideration).
[25] *Id.*

certificated stock. Accordingly, the reference to Section 169 in Section 8-112 does not change the plain meaning of Section 8-112's physical seizure requirement. As explained above, before the 1998 amendments to Section 324, Section 8-112's combined reference to Sections 169 and 324 gave Delaware courts the jurisdictional basis and power to order the sale of certificated shares without physically seizing the certificate. After the 1998 amendments to Section 324, Delaware courts retained the jurisdiction under Section 169 to attach and sell shares, but no longer had the power to do so without requiring physical seizure of the share certificate.

Deng also makes the strained argument that the 1998 amendment to Section 324 requiring physical seizure of a stock certificate only applies to non-Delaware corporations. Although Deng concedes Section 324's language makes no distinction between Delaware corporations and non-Delaware corporations, Deng argues this is the only plausible reading of the relevant statutes.[26] Unphased by the absence of *any* statutory language in *any* of the relevant sections distinguishing between Delaware corporations and foreign corporations, Deng argues this interpretation is compelled by Section 8-112's reference to Section 169.[27] This argument is so convoluted it is

[26] Pl.'s Opp. to Mot. for Reconsideration at 10-11.

[27] *Deng*, N21J-04630 AML (Dec. 5, 2022) (Transcript) at 17. Deng also argues the last sentence of the synopsis, which indicates the amendment was "intended to enhance the utility of stock of a Delaware corporation as collateral," supports his interpretation of the relevant statutory language. According to Deng, the synopsis uses "the corporation" to refer to a non-Delaware corporation and "Delaware corporation" when referring to a Delaware corporation. Deng reasons that the synopsis's statement that "the execution process [Section 324] provides is available only for securities of a debtor identified on the books of the corporation" means the reference to Section 8-

10

difficult to summarize, let alone address. But the Court declines to adopt an interpretation of unambiguous statutes that would be (1) at odds with the statutes' plain language; (2) untethered from any language in the statutes; and (3) contrary to other sections of the DGCL that expressly distinguish between Delaware and foreign corporations when the context of the statute is otherwise unclear.[28]

There is no Delaware caselaw directly addressing the statutory interpretation issue raised in this case, but Deng cites a recent District Court decision as support for his proffered interpretation of Sections 169, 324, and 8-112. That decision, *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, does not interpret the statutes at issue, and its unique procedural posture makes it inapposite here.[29] The District Court's decision in *Crystallex International* addressed, *inter alia*, a motion to quash a writ of attachment issued for the shares of a company to satisfy a judgment against a foreign country.[30] The company was owned and controlled by the foreign country, and the District Court issued a writ of attachment to the U.S. Marshal to serve the writ on the company so the shares at issue could be

---

112 added to Section 324 only applies to non-Delaware corporations. *See* Pl.'s Opp. to Mot. for Reconsideration at 10. As explained above, this argument is so detached from the textual language of the statutes and the synopsis that it is difficult to explain. Suffice to say that Deng's argument does not make sense when the synopsis is read as a whole.

[28] *Compare* 8 *Del. C.* §§ 300, 303, 321 (referring to rules regarding a "corporation of this State" or a "corporation in this State"), *with* 8 *Del. C.* § 322 (referring to a "foreign corporation").

[29] *Crystallex Int'l Corp. v. Bol. Republic of Venez.*, 2021 WL 129803 (D. Del. Jan. 14, 2021).

[30] *Id.* at *9-15.

11

attached and sold.[31]  Years later, the company moved to quash the writ on the basis that it was "inoperable" because the company did not possess the physical certificates for the shares at issue.[32]

The District Court concluded the company was judicially estopped from arguing that physical seizure of the stock certificates was required because the company previously represented to the court that the writ of attachment the court had issued was sufficient security to protect the judgment creditor's interests.[33] Based on that representation, the District Court did not require the company to post a bond while it appealed the District Court's previous rulings in the case.[34]  In addition to being judicially estopped, the District Court also held the company's argument that Delaware law required physical seizure of the certificates was untimely and should have been raised years earlier when the court originally considered the judgment creditor's motion for a writ of attachment.[35]  The District Court's ruling that a particular litigant (i) failed to raise a timely argument; and (ii) was judicially estopped from raising the argument now does not lend any persuasive force to Deng's interpretation of the Delaware statutes.[36]

---

[31] The shares at issue were shares the company held in its wholly owned subsidiary. *Id.* at *1, 9.
[32] *Id.* at *8.
[33] *Id.* at *11.
[34] *Id.* at *11-12.
[35] *Id.* at *13-14.
[36] The other cases Deng cites also do not support his position.  In *Castro*, 598 A.2d at 681, the Delaware Court of Chancery held the pre-1998 version of Section 324 permitted attachment of stock without physical seizure of the stock certificate.  That case does not relate to the current

12

For the foregoing reasons, the Order issued by the Commissioner is contrary to the requirements of Delaware law.  The Court therefore grants the Motion for Reconsideration and vacates the Order entered on September 20, 2022.

**IT IS SO ORDERED.**

---

version of the statute, and there is no dispute that Section 324 permitted attachment and sale without physical seizure before that Section was amended in 1998.  Likewise, this Court's statement in *Alberta Securities Commission v. Ryckman*, 2015 WL 2265473, at *10 (Del. Super. May 5, 2015) that "any shares [the judgment debtor] owns in [a Delaware corporation] are owned in Delaware" and may be attached for debt or other demands does not address whether attachment of certificated stock may be accomplished without actual seizure of the certificate.  The *Ryckman* case resolved objections to discovery in aid of execution and had nothing to do with seizure of a stock certificate.